# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE BANK & TRUST CO., d/b/a<br>PATRIOT CAPITAL<br><br>        *Plaintiff,*<br><br>  v.<br><br><br>PHILLY WHOLESALE, LLLC<br>SAURABH KAMRA<br>MALWA INVESTORS GROUP, INC.<br>HARPINDER SINGH<br><br>        *Defendants.* | CIVIL ACTION<br>No. 16-05508 |

**PAPPERT, J.**                                                              **August 2, 2017**

## MEMORANDUM

State Bank & Trust Company d/b/a Patriot Capital entered into two equipment financing agreements—one with Philly Wholesale, LLC, which was personally guaranteed by Saurabh Kamra, and another with Malwa Investors Group, Inc., which was personally guaranteed by Harpinder Singh. Defendants initially failed to appear or otherwise defend the suit, and default was entered against them. Patriot thereafter moved for the entry of default judgment. Defendants subsequently retained counsel who filed a motion to open default as to Malwa and Singh only and informed the Court that he would not oppose the entry of default judgment with respect to the breach of contract and breach of guaranty claims against Philly Wholesale and Kamra (counts one and three).[1] After holding a hearing, the Court grants the Motion and enters

---

[1] Though Patriot also brought a count of fraud against Philly Wholesale and Kamra, *see* (Compl. ¶¶ 61–68), it did not move for the entry of default judgment on that claim, *see* (ECF No. 5).

1

default judgment in favor of Patriot against Philly Wholesale on count one and against Kamra on count three. Philly Wholesale and Kamra are jointly and severally liable for a sum of $115,523.48, which includes $103,844.38 in damages and $11,679.10 in attorneys' fees and costs.

## I.

Patriot sued on October 20, 2016, asserting breach of contract claims against Philly Wholesale and Malwa (counts one and two), breach of guaranty claims against Kamra and Singh (counts three and four) and fraud claims against all Defendants (counts five and six). (Compl., ECF No. 1.) Defendants initially failed to appear or otherwise defend the suit, and Patriot moved for default judgment on the breach of contract and breach of guaranty claims on December 13, 2016. (ECF Nos. 5 & 6.) The clerk of court entered default on April 19, 2017, and the Court scheduled a hearing on the request for default judgment in order to ascertain damages, (ECF No. 8).

The day before the hearing was to take place, Julius Crawford contacted the Court purporting to represent all of the Defendants. He informed the Court that he intended to move to open default with respect to Malwa and Singh but did not intend to do so with respect to Philly Wholesale and Kamra because they did not have a meritorious defense. The Court accordingly cancelled the hearing and directed Crawford to enter his appearance and file his contemplated motion. Crawford entered his appearance for all Defendants on June 30, 2017, (ECF No. 15), and moved to open default with respect to Malwa and Singh on July 5, 2017, (ECF No. 16).

The Court rescheduled the hearing. (ECF No. 19.) The day before the hearing, Crawford notified the Court that he would be unable to attend due to a death in the

family.  (ECF No. 20.)  He requested a continuance with respect to Malwa and Singh, to which Patriot agreed.  (*Id.*)  But with respect to Philly Wholesale and Kamra, he confirmed that he "can offer no defense" and therefore had no objection to Patriot proceeding with the hearing and submitting the requisite proof of damages in his absence.  (*Id.*)  The Court held the hearing on Patriot's Motion for Default Judgment against Philly Wholesale and Kamra on July 26, 2017.  (ECF No. 21.)  At the hearing, plaintiff's counsel presented testimony from State Bank & Trust Co. Vice President Travis Whiddon regarding the method by which damages were calculated.

## II.

State Bank & Trust Co. is a commercial bank and lending institution headquartered in Atlanta, Georgia.  (Compl. ¶ 8.)  Patriot is a division of State Bank that specializes in equipment financing for fueling and convenience stores.  (Hr'g Tr. at 10:18–23.)  Philly Wholesale, as borrower, entered into an equipment finance agreement with Patriot for a loan to pay for equipment to be used in a convenience store in Philadelphia.  (*Id.* ¶¶ 9, 11, 13.)  To induce Patriot to finance Philly Wholesale's purchase of the equipment, Kamra personally guaranteed the $100,000 loan on March 4, 2016.  (*Id.* ¶ 10; Ex. P-5.)

In connection with the loan, Philly Wholesale purported to contract with Safeway Developers, Inc. to provide and install the equipment.  (Compl. ¶ 14; Ex. P-1.)  On March 8, 2016, Patriot submitted to Safeway an "Invoice Request," indicating that Philly Wholesale had been approved for financing and requesting detailed invoices for the equipment to be purchased.  (Compl. ¶¶ 33, 45; Ex. P-3.)  Safeway submitted to Patriot copies of the purported invoices.  (Compl. ¶¶ 15, 43; Ex. P-2.)

On March 17, 2016, Philly Wholesale executed and delivered Equipment Finance Agreement No. 612284 ("the Agreement") with Patriot for $100,000, to be paid in sixty monthly installments of $2,124.84. (Compl. ¶ 34; Ex. P-4.) Under the terms of the Agreement, Philly Wholesale and Kamra represented to Patriot that they needed the equipment identified in the invoices for the operation of their business; they intended to use the loan proceeds to purchase the equipment; they would use and maintain the equipment only at the specified business address and would not move it to another location without prior approval from Patriot; and they would give Patriot a first priority purchase money security interest in the equipment. (Compl. ¶ 13; Ex. P-4, ¶¶ 1, 5.) The Agreement also gave Patriot the right to inspect the premises of the purported business and specified the remedies available to Patriot in the event of a default. (Ex. P-4, ¶¶ 5, 11.)

On March 24, 2016, Kamra submitted to Patriot a Delivery and Acceptance Agreement, confirming that the equipment had been satisfactorily delivered, installed and inspected by Philly Wholesale and its representatives. (Compl. ¶ 35; Ex. P-6.) On April 18, 2016, Patriot advanced Philly Wholesale $100,000. (Compl. ¶ 36.)

In August 2016, Patriot, through a third party, inspected the premises at 521-525 South 5th Street where Philly Wholesale purportedly conducted its business. (Compl. ¶ 18.) The property was vacant, did not contain any equipment and had a sign in the window showing that it was available to rent. (*Id.* ¶ 19; Ex. P-7.) By letters dated September 21, 2016, Patriot's counsel demanded that Philly Wholesale as borrower, Kamra as guarantor, and Safeway as vendor, either provide written responses confirming the whereabouts of the equipment or refund the loan proceeds.

(Compl. ¶ 21; Ex. P-8.)  Safeway provided Patriot with an executed Certificate of Delivery and Acceptance from Philly Wholesale acknowledging receipt of the equipment.  (*Id.* ¶ 24.)  Kamra called Patriot and stated that the convenience store had closed.  (Compl. ¶ 22.)  He represented that as a result, the equipment had been purchased but had not been delivered and installed at the business premises.  Though he claimed he had the equipment in storage, he refused to disclose where the equipment was stored or further substantiate his claims.  (*Id.*)

Patriot contends that Philly Wholesale breached the terms of the Agreement by failing to use the loan proceeds to purchase the equipment or, if it did purchase the equipment, failing to install and maintain the equipment at the specified address in accordance with the Agreement's terms.  (*Id.* ¶ 39.)  In addition, Whiddon testified that though Philly Wholesale paid the equivalent of two monthly payments at the time it signed the Agreement in March 2016, the company did not make any of the monthly payments.[2]  (Hr'g Tr. at 18:20–19:9.)  Philly Wholesale's failure to tender the payment due for May 2016 rendered it in default as of June 20, 2016.  *See* (Ex. P-19).

## III.

Federal Rule of Civil Procedure 55 governs the entry of default judgment.  Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct.  *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).  The Court

---

[2]     Pursuant to the Agreement's terms, Patriot collected the equivalent of the first and last monthly payments at the time of signing and reserved the right to apply the funds to Philly Wholesale's unpaid balance in the event of a default.  (Ex. P-4, ¶ 2.)  When Philly Wholesale subsequently failed to pay for the month of April, Patriot satisfied that balance with the funds for the last payment.  *See* (Hr'g Tr. at 18:20–19:9).

must consider and make explicit factual findings as to these three factors. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). Moreover, before a court can enter a default judgment, a plaintiff must present evidence of: (1) the court's basis of personal jurisdiction over defaulting defendants; (2) proper service of process upon defaulting defendants; (3) facts necessary to state a cause of action; and (4) the amount claimed in damages. *D'Onofrio v. II Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006). "[T]he factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

## IV.

### A.

When a court considers personal jurisdiction in the posture of a default judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a *prima facie* showing," and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *D'Onofrio*, 430 F. Supp. 2d at 437 (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). A plaintiff presents a *prima facie* case by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citing *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)). Patriot has done so here.

#### i.

In its Complaint, Patriot alleges that Philly Wholesale is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and is thus a citizen of the Commonwealth. (Compl. ¶ 2.) Patriot also contends that Philly Wholesale maintains a registered office at 8102 West Chester Pike, Upper Darby, PA 19082. (*Id.*) Indeed, it was at this address that Patriot was able to serve Philly Wholesale's Authorized Agent, Aman Kaur. *See* (Proof of Service, ECF No. 3). Patriot has presented sufficient evidence of the Court's personal jurisdiction over Philly Wholesale. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business.").

### ii.

Patriot has also made a *prima facie* showing of personal jurisdiction over Kamra. The Complaint alleges that Kamra is a citizen of and resides in Delaware. (Compl. ¶ 3.) "A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see also* FED. R. CIV. P. 4(k)(1)(A). Pennsylvania's long-arm statute allows for jurisdiction over non-residents to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See* 42 PA. STAT. AND CONS. STAT. ANN. § 5322(b) (West 2017); *see also Remick v. Manfredy*, 328 F.3d 248, 255 (3d Cir. 2001) (citation omitted). To satisfy due process, a non-resident defendant must have "minimum contacts" with the forum state and the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *See id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)).  Personal jurisdiction over a non-resident defendant may be either general or specific.  *Remick*, 238 F.3d at 255.  Because Patriot has not alleged that Kamra maintained the "continuous and systematic contacts" with Pennsylvania necessary to establish general personal jurisdiction, the Court's analysis is limited to whether it has specific personal jurisdiction over Kamra.

Specific jurisdiction is applicable "whenever the cause of action arises out of or relates to the contacts between the defendant and the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 427 (1984), and properly exercised where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," *Mellon Bank (East) PSFS*, 960 F.2d at 1221–22 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, the Complaint alleges that Kamra personally guaranteed the contract on behalf of Philly Wholesale, a Pennsylvania corporation in which he has a financial interest, for the purchase of equipment to be maintained and employed in Pennsylvania in furtherance of the resident corporation's business.  Taking these allegations as true, Patriot has alleged sufficient facts to support personal jurisdiction over Kamra.  *See Frontier Ins. Co. v. Nat'l Signal Corp.*, No. 98-4265, 1998 WL 778333, at *1 (E.D. Pa. Nov. 9, 1998) (holding that non-resident defendants had sufficient minimum contacts where they personally guaranteed a contract for construction work to be performed in Pennsylvania because the "purpose of the Agreement focuse[d] on Pennsylvania," the payments sought were incurred in Pennsylvania and "the question of breach or performance relate[d] to Pennsylvania-focused events"); *Hale v. MRM Trucking, Inc.*,

No. 90-6072, 1991 WL 114829, at *2 (E.D. Pa. Jun. 21, 1991) (holding that a non-resident defendant had sufficient minimum contacts with Pennsylvania where he signed a guaranty for a Pennsylvania corporation in which he had a financial interest); *see also Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2005 WL 452349, at *5 (E.D. Pa. Feb. 25, 2005) (same).

## B.

The Court must also ensure there is sufficient proof of service before granting a default judgment. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985). Under Federal Rule of Civil Procedure 4(h)(1)(B), a plaintiff may effectuate service on a corporation in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B). Patriot, through a third-party, served Philly Wholesale's Authorized Agent Aman Kaur in Upper Darby, Pennsylvania on November 2, 2016. (ECF No. 3.) Federal Rule of Civil Procedure 4(e)(2)(C) permits service to an individual—other than a minor, an incompetent person or a person whose waiver has been filed—within a judicial district of the United States by "delivering a copy of the summons and complaint to the individual personally." FED. R. CIV. P. 4(e)(2)(A). Patriot, through a third-party, personally served Kamra in Claymont, Delaware on November 5, 2016. (ECF No. 4.)

## C.

Taking the alleged facts as true, Patriot has stated causes of action against Philly Wholesale for breach of contract and against Kamra for breach of guaranty. When a federal court sits in diversity jurisdiction over a civil proceeding, it must apply the substantive law of the state where it sits to resolve the claims, including its choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). The Court accordingly must apply Pennsylvania choice of law rules to determine the law that applies to the contracts. *See Berg*, 435 F.3d at 462; *Xerox Corp. v. Bentley*, 920 F. Supp. 2d 578, 579 (E.D. Pa. 2013).

Pennsylvania courts generally give effect to express choice of law provisions in contracts. *See, e.g., Howard Savs. Bank v. Cohen*, 607 A.2d 1077, 1078 (Pa. Super. Ct. 1992); *Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied."). Here, the Agreement states that it "shall be governed by and construed in accordance with the laws or Georgia or the laws of the home state of assignee." (Ex. P-4, ¶ 14.) Because Patriot did not subsequently assign its rights under the Agreement to any third parties, Georgia law governs.

### i.

Patriot has stated a breach of contract claim against Philly Wholesale. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (quoting *Kuritzky v. Emory Univ.*, 669 S.E.2d 179 (Ga. Ct. App. 2008)).

Under the Agreement, Philly Wholesale promised to make monthly payments of $2,124.84 and maintain the equipment at the specified address absent Patriot's prior approval.  (Ex. P-4, ¶¶ 2, 5, 11.)  The Agreement states: "You will be in default if any or all of the following occurs: (a) if you do not pay any payment or other sum due to us or our assigns when due, (b) if you do not perform any other obligation or warranty herein within five (5) days after we made demand therefore . . . ."  (*Id.* ¶ 11.)  Philly Wholesale breached the Agreement by failing to make the monthly payments at the time they were due and relocating and maintaining the equipment at an unknown location without Patriot's knowledge.  As a result, Patriot, the party with the right to complain under the Agreement, has suffered damages.  (Compl. ¶ 41.)

### ii.

Patriot has also stated a breach of guaranty claim against Kamra.  "The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another."  *Lynchar, Inc. v. Colonial Oil Indus., Inc.*, No. A17A0391, 2017 WL 2361144, at *4 (Ga. Ct. App. May 31, 2017) (quoting GA. CODE ANN. § 10-7-1)).  The Guaranty, signed and executed by Kamra on March 3, 2016, states that it is "a Guaranty of payment, not collection, and the undersigned acknowledges and agrees that his/her liability shall be absolute and unconditional and continuing, and shall be joint and several, and in the event of a default, Creditor shall have no obligation whatsoever to pursue the Debtor or any other obligors or guarantors or any equipment or other collateral before pursuing the undersigned under this Guaranty."  (Ex. P-5, ¶ 11.)

"A personal contract of guaranty must be in writing and must satisfy all of the requisites of the [S]tatute of [F]rauds."  *Id.* (quoting *Sysco Food Svcs. v. Coleman*, 489

S.E.2d 568 (Ga. Ct. App. 1997)); *see also* GA. CODE ANN. § 13-5-30(2) (2010). Under the

Statute of Frauds, a promise to answer for another's debt is only enforceable against

the promisor if it identifies the debt, the principal debtor, the promisor and the

promisee. *Cmty. Magazine, LLC v. Color Xpress*, 756 S.E.2d 564, 566 (Ga. Ct. App.

2014). The Guaranty does so here. First, it clarifies that the term "Agreement"

references Agreement 6122284 between State Bank & Trust Co. d/b/a Patriot as

"Creditor" and Philly Wholesale as "Debtor." (Ex. P-5.) It then identifies the promisor,

promisee and debt: "The undersigned hereby irrevocably absolutely and unconditionally

guarantees to Creditor full and prompt payment and performance when due of each

and every obligation of Debtor under the Agreement." (*Id.* ¶ 1.) The Guaranty thus

satisfies the Statute of Frauds.

Under Georgia law, the Court must strictly construe an alleged guaranty

contract in favor of the guarantor, and the guarantor's liability may not be extended by

implication or interpretation. *See Cmty. Magazine, LLC*, 756 S.E.2d at 566; *Caves v.

Columbus Bank & Tr. Co.*, 589 S.E.2d 670, 676 (Ga. Ct. App. 2003). However, Georgia

law is also "clear that creditors are entitled to summary judgment in a suit on an

unconditional guaranty when the guarantor has waived all of his defenses." *Core

LaVista, LLC v. Cumming*, 709 S.E.2d 336, 340 (Ga. Ct. App. 2011) (citing *Brookside

Communities v. Lake Dow North Corp.*, 603 S.E.2d 31 (Ga. Ct. App. 2004)). Kamra did

so here. *See* (Ex. P-5, ¶ 2 ("The undersigned hereby waives . . . (ii) any and all defenses

otherwise available to a guarantor or accommodation party.")). And in any event,

Kamra's counsel has represented that he does not have a defense. *See* (ECF No. 20).

Kamra unconditionally guaranteed Philly Wholesale's "full and prompt payment and

performance" under the Agreement with Patriot and breached the Guaranty by failing to assure the same, causing Patriot to suffer damages.  (Compl. ¶¶ 54–56.)

### D.

Finally, a plaintiff seeking default judgment must present evidence of the amount claimed in damages.  *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009).  "When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded."  *Rainey*, 354 F. App'x at 724 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).  "Rather, defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to damages sought."  *Id.* 431 F.3d at 165).  District courts must conduct an inquiry in order to ascertain the amount of damages with "reasonable certainty."  *Bricklayers & Allied Craftworkers v. WaterControl Servs., Inc.*, No. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  In short, the Court must ensure that there is a basis for the damages specified in the default judgment.  *See Trickel v. Disc. Gold Brokers, Inc.*, No. 3:14-1916, 2016 WL 4435699, at *6 (M.D. Pa. Jan. 5, 2016) (citing *Transatlantic Marine Claims Agency, Inc., v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).  In performing this task, "[t]he district court has considerable latitude in determining the amount of damages."  *Trickel*, 2016 WL 4435699, at *6 (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993)).

The Agreement provides that "[i]f any part of a payment is late, you agree to pay a late charge of 15% of the payment which is late or if less, the maximum charge allowed by law." (*Id.*) The Agreement further provides that in the event of default:

> [Y]ou shall be required to pay us or our assigns the entire unpaid balance of the Agreement, including accrued but unpaid periodic payments, plus all late charges and costs, plus an amount equal to the present value of the entire unpaid balance of the total periodic payments hereunder discounted at three percent (3%) per annum as of the date of default, plus interest thereafter at the rate of eight percent (8%) per annum, plus any other sums and or damages, all of which shall be immediately due and payable.

(Ex. P-4, ¶ 11.)

"If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." *Turner v. The Atlanta Girls' School*, 653 S.E.2d 380 (Ga. Ct. App. 2007) (internal citations and quotations omitted). "Before enforcing a liquidated damages clause, however, a trial court must determine whether the provision is, in fact, an enforceable pre-estimation of damages or an unenforceable penalty. Although this determination necessarily involves some fact-finding by the trial court, it ultimately presents a question of law." *Fuqua Const. Co., Inc. v. Pillar Dev., Inc.*, 667 S.E.2d 633, 635 (Ga. Ct. App. 2008) (citing *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 375 S.E.2d 222 (Ga. 1989)).

In *Southeastern Land Fund v. Real Estate World*, 227 S.E.2d 340 (Ga. 1976), the Georgia Supreme Court developed a three-part test for determining whether a liquidated damages provision is enforceable. "First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be

a reasonable pre-estimate of the probable loss." *Id.* at 343 (internal citations and quotations omitted). A liquidated damages clause is enforceable only if it meets each of these requirements. *Caincare, Inc. v. Ellison*, 612 S.E.2d 47, 50 (Ga. Ct. App. 2005); *see also* GA. CODE ANN. § 13-6-7 (2010). Under the second prong, the parties must intend to provide for damages instead of a penalty. "[W]hether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable." *Southeastern*, 227 S.E.2d at 342. Under the third prong, "the touchstone question is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss of the defaulting party. Deterrence should not factor into the equation. Where a designated sum is inserted into a contract for the purpose of deterring one or both of the parties from breaching it, it is a penalty." *Caincare*, 612 S.E.2d at 50.

Patriot has submitted documentation and presented testimony in support of the damages requested, composed of (i) the unpaid balance, (ii) late charges, (iii) an amount equal to the present value of the unpaid balance discounted by three percent (3%), (iv) post-default interest at the rate of eight percent (8%) per annum and (v) attorneys' fees and costs. *See* (Ex. P-19). The Court addresses each in turn.

### i.

The unpaid balance at the time of default, calculated by subtracting the two monthly payments Philly Wholesale tendered at the time of signing (totaling $4,249.80)

from the principal ($100,000.00), is $95,566.17.[3]  (Ex. P-19; Hr'g Tr. at 18:22–19:4, 31:1–13.)

**ii.**

The Agreement also provides for a late charge equal to fifteen percent (15%) of any late payment.  (Ex. P-19, ¶ 7.)  Patriot's damages calculation includes $1,274.92 in late charges, comprised of four charges of $318.73, each equal to fifteen percent of a missed monthly payment of $2,124.84.  (Hr'g Tr. at 19:5–20:11); (Ex. P-19.)  Plaintiff's counsel stated that the late charges were imposed for missed payments in May, June and July of 2016.  (Hr'g Tr. at 19:3–9.)  He did not specify the origin of the fourth late charge.  Patriot's calculation, however, also includes post-default interest from the time of default, June 20, 2016, through July 5, 2017.

Though late charges have been upheld in some circumstances, *see W. Asset Mgmt., Inc. v. NW Parkway, LLC*, 784 S.E.2d 147, 157 (Ga. Ct. App. 2016) (upholding one-time ten percent late charges because damages caused by late payments would be difficult to estimate and the charges were a reasonable pre-estimate of damages because they reflected anticipated increases to the obligee's transaction costs), Georgia courts have held that late charges are unreasonable when imposed in conjunction with default interest.  *See, e.g.*, *In re Brandywine Townhouses, Inc.*, 518 B.R. 671, 680 (Bankr. N.D. Ga. 2014) (collecting cases); *In re Cliftondale Oaks, LLC*, 357 B.R. 883, 887 (Bankr. N.D. Ga. 2006) (collecting cases).  "In so holding, these courts reason that the late charge and the default interest rate are both intended to compensate the secured creditor for the increased administrative costs incurred upon the debtor's

---

[3]     In calculating the unpaid balance, Patriot omitted unpaid interest that accrued prior to the date of default.  (Hr'g Tr. at 15:11–16, 29:24–30:3.)

default, and, therefore, payment of both default interest and a late charge would represent a double recovery." *In re Cliftondale Oaks*, 357 B.R. at 887 (citing *In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284, 304–05 (Bankr. D. Mass. 1997)).

Here, with the exception of the late charge imposed for the May 2016 payment missed prior to default, Patriot's imposition of both late charges and post-default interest permits it to recover twice for the increased transaction and administrative costs associated with Philly Wholesale's post-default failures to make timely payments. *See id.* Thus, under the same logic applied in the above cases, the post-default late charges are an unenforceable penalty without a reasonable relation to the probable actual damages in contravention of *Southwestern*. Because the Court awards Patriot $7,959.48 in post-default interest, *see infra* subsection IV.D.iv, the three post-default late payments constitute double recoveries and must be omitted from the calculation. The court therefore awards Patriot $318.73 in late charges.

### iii.

In addition to the above, the Agreement also includes a liquidated damage clause for "an amount equal to the present value of the entire unpaid balance of the total periodic payments hereunder discounted at three percent (3%) per annum as of the date of the default." (*Id.* ¶ 11.) Patriot calculated that figure to be $93,935.86. (Ex. P-19; Hr'g Tr. at 16:1–8, 20:17–21:2.)

With respect to the first *Southeastern* prong, notwithstanding that the Agreement contemplates payment of a sum certain, it is conceivable that the injury caused by a default could be difficult to estimate in this situation. "Upon a default, Defendant's damages would include the loss of a rental income stream, the potential for

loss upon repossession and resale of the [equipment], and the time, effort, and management attention of Defendant's representatives in working through a default situation. These damages would vary depending upon the timing and circumstances of the default." *In re Holmes*, 369 B.R. 708, 737 (Bankr. M.D. Ga. 2007), *aff'd sub nom. Holmes v. Gen. Elec. Capital Corp.*, 387 B.R. 896 (M.D. Ga. 2008). The first requirement is thus arguably satisfied.

The second and third, however, are not. Under the provisions of the Agreement, Patriot is entitled to receive a sum equal to the amount of the unpaid balance *and* a sum equal to the present value of the unpaid balance reduced by three percent, in addition to accrued interest and late charges. The Agreement essentially contemplates a double recovery that would put Patriot in a far superior position following default to that which it was in before such default occurred. *See Carter v. Tokai Fin. Servs., Inc.*, 500 S.E.2d 638, 641 (Ga. Ct. App. 1998) (Where a business defaulted on a lease for telephone equipment, a liquidated sum was unreasonable because it allowed the lessor to recover the present value of all future rents and retain proceeds from a sale of the repossessed equipment, constituting a windfall); *Cf. Hammond v. James W. Griffin Co., Inc.*, 520 F. Supp. 162, 168 (N.D. Ga. 1981) ("A double recovery of liquidated damages as well as interest would constitute a penalty to defendants not sanctioned by that statute.").

Moreover, it does not appear that the parties "employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss of the defaulting party." *Caincare*, 612 S.E.2d at 50. As mentioned above, default forces Patriot to incur the "loss of a rental income stream, the potential for loss upon

repossession and resale of the [equipment], and the time, effort, and management attention of Defendant's representatives in working through a default situation." *In re Holmes*, 369 B.R. at 737. However, the damages provision for the unpaid balance and and accrued interest covers the loss of the income stream. And while that leaves probable damages from losses upon resale or due to time and effort expended, the provision for an additional amount equal to the present value of the unpaid balance decreased by just three percent cannot be considered a reasonable pre-estimate of those damages. Rather, the provision appears to be an excessive penalty aimed at deterring a breach with no reasonable relation to the probable actual damage. It is therefore unenforceable. *See Nat'l Serv. Indus., Inc. v. Here To Serve Restaurants, Inc.*, 695 S.E.2d 669, 674 (Ga. Ct. App. 2010) ("Where the amount [of liquidated damages] plainly has no reasonable relation to any probable actual damage which may follow a breach, the contractual provision will be construed as an unenforceable penalty. Moreover, in doubtful cases, the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage(s) actually shown, rather than a liquidation of the damages." (internal citations and quotations omitted)); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 356(1) ("A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."). The Court therefore omits the proposed amount of $93,935.86 from the damages awarded.

### iv.

As mentioned above, the Agreement also provides for post-default interest at the rate of eight percent (8%) per annum. (Ex. P-4, ¶ 11.) At this rate, $20.95 of post-

default interest accrues per day.[4]  Multiplying that figure by 380 days (from June 20, 2016 to July 5, 2017), the post-default interest due totals $7,959.48.  (Ex. P-19.)  This is a valid and enforceable liquidated damage clause.  *See, e.g.*, *MMA Capital Corp. v. ALR Oglethorpe, LLC*, 785 S.E.2d 38, 41–42 (Ga. Ct. App.2016) (upholding an 8% post-default interest provision as a reasonable non-penalty); *In re Cliftondale Oaks, LLC*, 357 B.R. at 886–87 (collecting cases).

### v.

Finally, without specifying any particular amount or percentage, the Agreement provides for "attorneys' fees and court costs."  (Ex. P-4, ¶ 11.)[5]  Under Georgia law, attorneys' fees are calculated using statutorily mandated percentages.  *See* GA. CODE ANN. § 13-1-11 (2010).  Section 13-1-11, titled "Validity and enforcement of obligations to pay attorney's fees upon notes or other evidence of indebtedness," states:

> (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or

---

[4]     Patriot calculated the rate of accrual to be $20.59 per day.  *See* (Ex. P-19); (Hr'g Tr. at 16:9–13).  However, the eight percent per annum  interest rate applied to the unpaid balance actually produces an accrual rate of $20.95 per day:  $95,566.17 (unpaid balance) x .08 (interest rate per annum) = $7645.29 (interest per year) / 365 days = $20.95 (interest per day).  The Court presumes that Patriot's listed amount of $20.59 was an inadvertent error and calculates the post-default interest using the correct figure.

[5]     At the hearing, plaintiff's counsel entered into evidence a ledger outlining his and his partner's hourly rates and the hours, broken down by task, spent on the case thus far, all of which were reasonable and sufficiently specific.  (Ex. P-18.)  Multiplying the hourly rates by the hours spent, the amount of attorneys' fees owed was $20,228.95 for October 2016 through May 2017 and $961 for June 2017.  (Ex. P-18, at 1–2.)  He then added $1301.56 in filing fees and courts costs to arrive at a grand total of $22,491.51.  (*Id.*); *see also* (Hr'g. Tr. at 21:8–25:2).  Finally, since that figure encompassed work done not only in furtherance of the claims against Philly Wholesale and Kamra but also those against Malwa and Singh, counsel calculated Philly Wholesale and Kamra's liability by dividing the total in half, arriving at $11,245.75.  (Exs. P-18 & 19); *see also* (Hr'g Tr. at 24:5–24).

Though this would be the appropriate method of calculating attorneys' fees under the law of Pennsylvania, among other states, under Georgia law, a specific statute governs the calculation of attorneys' fees.  *See* GA. CODE ANN. § 13-1-11 (2010).

other evidence is collected by or through an attorney after maturity, subject
to the following provisions:

. . . .

(2) If such note or other evidence of indebtedness provides for the payment of
reasonable attorney's fees without specifying any specific percent, such
provision shall be construed to mean 15 percent of the first $500.00 of
principal and interest owing on such note or other evidence of indebtedness
and 10 percent of the amount of principal and interest owing thereon in
excess of $500.00.

*Id.*

Here, the unpaid principal, $95,566.17, and the interest owing thereon,
$7,959.48, total $103,525.65. Fifteen percent of the first $500 is $75; ten percent of the
remaining $103,025.65 is $10,302.57. The proper amount of attorneys' fees under § 13-
1-11(a)(2) is therefore $10,377.54. The additional $1301.56 in filing fees and courts
costs brings Philly Wholesale and Kamra's total liability for attorneys' fees and costs to
$11,679.10.

**vi.**

In sum, Patriot has proven with reasonable certainty the following damages:
$95,566.17 unpaid balance, $318.73 in late charges, $7,959.48 in post-default interest
and $11,679.10 in attorneys' fees and costs. Philly Wholesale and Kamra are thus
jointly and severally liable for a total of $115,523.48 in damages.

**V.**

Patriot has presented sufficient evidence of the Court's personal jurisdiction over
the defaulting defendants, proper service of process upon the defaulting defendants, the
facts necessary to state a cause of action and the appropriate amount of damages.
*D'Onofrio*, 430 F. Supp. 2d at 436. The Court will now turn to the three factors that
control whether a default judgment should be granted: (1) prejudice to the plaintiff if

default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195.

First, Patriot would be prejudiced if default judgment were denied since it has presented sufficient evidence that Defendants' breaches of the Agreement and the Guaranty have caused it significant monetary injury, it has no other remedy against Defendants and Defendants have indicated no desire defend themselves in the matter. *See Summit Tr. Co. v. Paul Ellis Inv. Assoc.*, LLC, No. 2:12-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013); *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013). Second, defense counsel has represented that Philly Wholesale and Kamra do not have a meritorious defense. *See* (ECF No. 20). Finally, though it is unclear whether their initial delay was due to culpable conduct, it is irrelevant since now that they have appeared, they do not oppose the entry of default judgment. Default judgment is therefore entered in favor of State Bank & Trust Co. d/b/a Patriot Capital against Philly Wholesale on count one and Saurabh Kamra on count three, and Philly Wholesale and Kamra are jointly and severally liable for a sum of $115,523.48, composed of $103,844.38 in damages and $11,679.10 in attorneys' fees and costs.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.